UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLIFFORD ANTENOR MONTALVAN REYES, | Case No.  1:26-cv-0441-DC-JDP |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*, | |
| Respondents. | |

Petitioner Klifford Antenor Montalvan Reyes, an asylum applicant who has lived in the United States for the past three years, was arrested and re-detained by ICE.  He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without a hearing violates the Fifth Amendment and seeking immediate release.  For the reasons outlined below, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner, a citizen of Nicaragua, entered the United States in November 2022 after crossing the Mexican border.  ECF No. 6 at 5.  He came to the United States fleeing political violence.  *Id.* at 4.  Federal agents detained petitioner at the border, and the Department of Homeland Security ("DHS") released him with a Notice to Appear.  *Id.* at 5.  Petitioner has a pending asylum case.  *Id.*

On November 26, 2025, ICE asked petitioner to come to its San Jose office the following

1

day and to bring documents concerning misdemeanor charges that petitioner faced for allegedly violating California Penal Code §§ 422(a) (criminal threats) and 484(a) (larceny), for which he had been arrested on or about March 21, 2025.[1]  *Id*. at 4.  On November 27, 2025, petitioner arrived at the San Jose office, whereupon ICE arrested him.  *Id*.  Petitioner has been detained ever since.  *Id*.

Since entering the United States, petitioner has lived in San Jose, California with his common-law wife and minor child, who is a U.S. citizen.  *Id*.  Apart from the dismissed misdemeanor charges referenced above, petitioner has no record of arrests or criminal convictions.  *Id*.  He has complied with all the requirements imposed by his immigration case.  *Id.*

## Procedural History

On January 20, 2026, petitioner, initially proceeding pro se, filed a petition for habeas corpus, ECF No. 1, and a motion to appoint counsel, ECF No. 3.  Shortly thereafter, the court granted petitioner's motion to appoint counsel, ECF No. 4, and counsel was appointed, ECF No. 5.  On February 3, 2026, petitioner filed an amended petition.  ECF No. 6.  The following day, respondents filed an opposition.  ECF No. 9.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[1] These charges were dismissed on January 21, 2026.  ECF No. 6-1.

2

**Analysis**

Petitioner argues that respondents violated his Fifth Amendment Due Process rights by re-detaining him without notice and a hearing.[2]  ECF No. 6 at 3, 12.  Respondents counter that petitioner "received sufficient procedural due process" because he was granted temporary parole three years ago, which "can be withdrawn without notice."  ECF No. 9 at 4-5.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  The court considers each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  *Morrissey*, 408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations omitted).  Therefore, in *Morrissey*, the

---

[2] Petitioner also advances a statutory argument, contending that his detainment is governed by 8 U.S.C. § 1226(a) rather than by 8 U.S.C. § 1225(b)(2)(A), and that he therefore is entitled to a bond hearing before an immigration judge.  ECF No. 6 at 9.  Because I am recommending that the petition be granted on the grounds of due process alone, I find it unnecessary to reach petitioner's statutory argument.

Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that non-citizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025); *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Valencia Zapata*, 2025 WL 2741654, *6; *Shoimov v. Chestnut*, No. 1:25-cv-1603 CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). This court agrees with the bulk of other courts to have considered the issues presented here and finds that petitioner has a liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in November 2022. ECF No. 6 at 5. He has lived in the United States, subject to ICE supervision but outside of custody, for over three years. During that time, petitioner has formed "enduring attachments of normal life" while living in the United States. *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released non-citizens to have strong liberty interests).

Once a court has found that a non-citizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the non-citizen before depriving him of that liberty interest. This requires balancing the factors laid out in

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, petitioner has a significant private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been released in the United States under the supervision of ICE for over three years prior to his re-detention.  During that time, he applied for asylum and worked to support his family, including his minor child.  ECF No. 6 at 5.  *See Salazar v. Casey*, No. 25-cv-2784-JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high.  Petitioner was released on his own recognizance after his initial detention at the border.  Prior to releasing petitioner, immigration officers necessarily determined that he was neither a flight risk nor a danger to the community.  *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community").  And in the intervening years, there has been no indication that he has become a flight risk or a danger to the community.  *See Salazar*, 2025 WL 3063629, at *4 (noting that there was no evidence that the petitioner presented a danger to the community or a flight risk).  Absent a pre-detention hearing in

front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G.*, 2025 WL 3254999, at *7 ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

Respondents neither argue that petitioner is now a danger to public safety or a flight risk, nor do they show that a hearing has been afforded petitioner since his detainment on November 27, 2025. *See* ECF No. 9. "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty.[3] *See id.*

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide additional procedural safeguards.

A consideration of the *Mathews* factors demonstrates that petitioner is entitled to notice and an opportunity to be heard before re-detention. Accordingly, petitioner has demonstrated that

---

[3] Respondents argue that petitioner's parole under 8 U.S.C. § 1182(d) can be revoked "without notice" and without any "specific reasons." ECF No. 9 at 5. Such argument, however, runs afoul of the regulations, which provide that a parolee must receive written notice of the revocation of parole, and that such parole can only be terminated "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i). Respondents do not provide any evidence showing that petitioner was provided written notice of the revocation of his parole, much less an explanation as to why the parole's purpose has been served or why humanitarian reasons and public benefit no longer warrant parole. Accordingly, petitioner has not received the due process to which he is entitled under § 1182(d).

respondents violated his Fifth Amendment Due Process rights.

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted. If respondents seek to re-detain petitioner, they should first be required to provide him with written notice and a hearing before a neutral adjudicator. At any such hearing, the government should be required to bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner should be allowed to have his counsel present.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 6, be GRANTED.

2. Respondents be ordered to immediately release petitioner from their custody under conditions no stricter than those to which he was subject to prior to his November 27, 2025 detention.

3. Respondents be enjoined and restrained from re-detaining petitioner, absent exigent circumstances, without first providing petitioner with written notice and a pre-detention hearing before a neutral adjudicator. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have his counsel present.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    February 13, 2026    

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE